

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the order of the Court.**



Signed May 11, 2006                                                          United States Bankruptcy Judge

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § § | |
| Jeffrey Roland Boggess | § § | Case No.: 05-43010-rfn-7 |
| Debtor | § § | |
| Jeffrey Roland Boggess | § § | |
| Plaintiff. | § § | |
| v. | § | Adv. Case No.: 05-04263 |
| Jeana Lungwitz, Lauren Mutti, and Darlene Byrne | § § § | |
| Defendants | § § | |

## MEMORANDUM OPINION AND ORDER

Defendant Jeana Lungwitz ("Lungwitz") is a law professor at the University of Texas School of Law ("UT"), who acts as a supervisor in that school's domestic violence clinic. Defendant Lauren Mutti ("Mutti") is a third-year law student at UT and a participant in the clinic. Pursuant to their participation in the clinic, Lungwitz and Mutti represented Martha Boggess, debtor's wife, in her state court divorce action against debtor. In that case, defendants sought and procured from State Judge Darlene Byrne an order temporarily restraining debtor from waiving his personal exemptions in his chapter 7 bankruptcy case. Debtor responded by filing this adversary proceeding wherein, among other things, he seeks injunctive relief, declaratory relief and damages pursuant to 42 U.S.C. § 1983 against defendants for their role in procuring the TRO. After previously dismissing all other claims, the court now dismisses the section 1983 claim against Lungwitz and Mutti pursuant to FED. R. CIV. P. 12(b)(6) because Lungwitz and Mutti are not state actors, and thus, did not act under color of state law.[1]

### I. BACKGROUND

Debtor and his wife, Martha Boggess, are seeking a divorce in the 126th Judicial District Court of Travis County, Texas. Defendants Lungwitz and Mutti represent Ms. Boggess in the divorce action through the University of Texas Domestic Violence Clinic. Lungwitz is a law professor at UT and supervisor of the clinic, and Mutti is a third-year law student participating in the clinic.

---

[1] This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157 and the standing order of reference in this district. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O). This memorandum opinion constitutes the court's findings of fact and conclusions of law with respect to the section 1983 claim, pursuant to FED. R. BANKR. P. 7052.

2

On March 28, 2005, debtor filed a voluntary bankruptcy petition under chapter 7 of the Bankruptcy Code in this district and division. In July 2005 this court entered an agreed order lifting the automatic stay to allow the divorce action to proceed.

In September 2005 debtor filed a motion to extend the time to object to his discharge in his bankruptcy case. Debtor's wife opposed that motion asserting that debtor was improperly threatening to waive his property exemptions over community property to gain bargaining leverage in the divorce action.

On November 28, 2005, Lungwitz and Mutti filed on behalf of debtor's wife an application in the divorce action asking the state court to temporarily enjoin debtor from waiving his exemptions in the bankruptcy case. After conducting a hearing, Judge Byrne entered an order temporarily restraining debtor from waiving his exemptions to the extent that such a waiver would detrimentally affect the value of the parties' community and separate property.[2]

On November 30, 2005, debtor filed in this court an "Emergency Motion for Relief From Illegal Order of State District Court" requesting essentially the same injunctive relief sought in this adversary proceeding, as well as an additional extension of time to object to his discharge. On December 1, 2005, this court granted the extension, but deferred its ruling with respect to all other relief requested by debtor. The next day, debtor filed this adversary proceeding against Lungwitz, Mutti, and Judge Byrne. In his complaint, debtor requested

---

[2] Specifically, the TRO prohibits debtor from waiving his exemptions "to the extent such waiver would have the effect of 1) intentionally, knowingly, or recklessly destroying, removing, concealing, encumbering, transferring or otherwise harming or reducing the value of the property of either [debtor] or [his wife] and to the extent such waiver would result in any alienation of any property of [debtor or his wife], whether separate or community . . . ."

injunctive and declaratory relief with respect to the TRO, damages pursuant to section 1983, attorneys fees, costs and interest.

On December 14, 2005, the defendants filed a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) and Bankruptcy Rule 7012. On January 11, 2006, the court dismissed all claims against the defendants except for the section 1983 claim against Lungwitz and Mutti. The court deferred its ruling on that claim until further briefing by the parties and ordered debtor to show cause why the section 1983 claim should not be dismissed because, among other reasons, Lungwitz and Mutti were not acting under color of state law.

## II. ANAYLSIS

### A. Standard of Review Under Rule 12(b)(6)

Federal Rule of Civil Procedure 12 (b)(6), made applicable to adversary proceedings by Bankruptcy Rule 7012, provides that a complaint may be dismissed if the plaintiff fails to state a claim upon which relief may be granted. Viewing the complaint in the light most favorable to the plaintiff, the court must determine whether the complaint states a valid claim for relief. *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court must accept as true all well-pleaded allegations contained in the plaintiff's complaint. *Albright v. Oliver*, 510 U.S. 266, 268 (1994). The facts pled must be specific, however, and not merely conclusory. *Guidry v. Bank of La Place,* 954 F.2d 278, 281 (5th Cir. 1992). Dismissal is proper when "even the most sympathetic reading of [the] pleadings uncovers no theory and no facts that would

4

subject the present defendants to liability." *Jacquez v. Procunier*, 801 F.2d 789, 791-92 (5th Cir. 1986).

Debtor contends that the section 1983 claim, and specifically the issue of whether defendants Lungwitz and Mutti acted under color of state law, is a fact-bound inquiry that cannot be subject to a motion to dismiss. Although a section 1983 claim is fact dependent, this does not prevent the court from concluding that there are no facts asserted upon which section 1983 liability can be established. If debtor fails to allege sufficient facts to support his claim, this court has the power, indeed the obligation, to dismiss that claim.

### B. Section 1983

Section 1983 provides a remedy for deprivation of rights secured by the Constitution and laws of the United States when that deprivation takes place under color of state law. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 924 (1982). It was enacted to enforce the provisions of the Fourteenth Amendment of the Constitution, which provides in part that "[n]o State make or enforce any law which shall abridge the privileges or immunities of citizens of the United States . . . ." *Id.* at 934. Because the Fourteenth Amendment is directed at states it can be violated only by conduct that may be fairly characterized as "state action." *Id.* at 937. To state a claim under section 1983, the plaintiff must allege: (1) a violation of a right secured by the Constitution and laws of the United States; and (2) that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 49 (1988). Private conduct, no matter how discriminatory or wrongful, is not actionable under section 1983. *American Mfgs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999).

Here, debtor alleges that he has a federal right pursuant to 11 U.S.C. § 522 to withdraw his property exemptions in his bankruptcy case, and that Lungwitz and Mutti deprived him of that right by procuring the TRO in state court. He alleges that Lungwitz acted under color of state law because she is a state employee. He asserts that Mutti acted under color of state law because she willfully participated in the representation of Ms. Boggess, is supervised by Lungwitz, and is receiving academic credit for her participation in the clinic, thereby receiving encouragement from the state.

This court abstained from ruling on the issue of whether debtor has a right pursuant to 11 U.S.C. § 522 to withdraw his property exemptions. For purposes of the motion, however, the court assumes that debtor has such a right. The issue before the court, therefore, is whether defendants acted under color of state law in procuring the TRO and allegedly depriving debtor of his right to waive his property exemptions.

The traditional definition of acting under color of state law requires the "defendant to have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. at 49, *citing Unites States v. Classic*, 313 U.S. 299, 326 (1941). In *Lugar v. Edmondson Oil Co.,* the Court made clear that conduct that constitutes state action under the Fourteenth Amendment is also "action under color of state law." *Lugar* at 494. To find state action the plaintiff must demonstrate that: (1) the deprivation was caused by the exercise of some right or privilege created by the State, or by a rule of conduct imposed by the State or by a person for whom the State is responsible; and (2) defendant is a person who may fairly be said to be a "state actor." *Lugar* at 937; *see also Tompkins v. Cyr*, 878 F. Supp. 911, 915 (N.D. Tex. 1995) ("First, the court must ascertain whether the alleged constitutional deprivation resulted

6

from the exercise of a right or privilege having its source in state authority . . . . Second, the court must determine whether the private party could be fairly described as a state actor."). The court assumes without deciding that debtor's pleadings satisfy the first prong of *Lugar v. Edmondson Oil Co*.

### C. Lungwitz and Mutti are Not State Actors

With respect to the second prong, courts have developed different tests in different contexts to determine whether a defendant is a state actor. *See Richard v. Hoechst Celanese Chemical Group, Inc*., 355 F.3d 345, 352 (5th Cir. 2003)(and cases cited therein). Under the public function test the court examines whether the private entity performs a function that is "exclusively reserved to the state." *Id.* (citation omitted). The state compulsion (or coercion) test holds the state responsible "for a private decision . . . when the state has exercised coercive power or has provided such significant encouragement either overt or covert that the choice must in law be deemed to be that of the State." *Id.* (citations omitted). "Regardless of the label, 'only by sifting facts and weighing circumstances can the nonobvious involvement of the state in private conduct be attributed its true significance.'" *Tompkins v. Cyr*, 878 F. Supp. at 915*, quoting Lugar, 102 S. Ct. at 2755* (other citation omitted).

In *Polk County v. Dodson*, 454 U.S. 312 (1981), the Court rejected the notion that state employment is sufficient to render a public defender a state actor when representing a criminal defendant. The Court found it "peculiarly difficult" to detect state action in that circumstance because the attorney's representation "entailed functions and obligations in no way dependent on state authority." 454 U.S. at 318. The Court held: "This is essentially a private function, traditionally filled by retained counsel, for which state office and authority are not needed." *Id.* at 319. The Court further held:

7

> From the moment of her appointment, Shepard became Dodson's lawyer, and Dodson became Shepard's client. Except for the source of payment, their relationship became identical to that existing between any other lawyer and client. 'Once a lawyer has undertaken the representation of an accused, the duties and obligations are the same whether the lawyer is privately retained, appointed, or serving in a legal aid or defender program.'

*Id.* at 318, *quoting* ABA Standards for Criminal Justice 4-3.9 (2d ed. 1980). The Court noted that the public defender is not amenable to administrative direction in the same sense as other state employees, but rather, in the day-to-day defense of her client, is obligated to act under canons of professional ethics that mandate exercise of independent judgment on behalf of the client and in that way "retains all essential attributes of a private attorney." *Id.* at 321. Consequently, the Court held that the public defender's actions could not support a section 1983 suit when she was performing traditional lawyer functions in a state criminal proceeding.

Other courts have applied a similar functional test to hold that court-appointed lawyers and legal aid attorneys are not liable under section 1983 when acting in a professional capacity on behalf of their clients. *See Rodriguez v. Weprin*, 116 F.3d 62 (2d Cir. 1997) (court-appointed attorney performing a lawyer's traditional functions as counsel to defendant not acting under color of state law and not subject to suit under section 1983); *Tarka v. Time Inc. Magazine Co.,* 1991 U.S. Dist. LEXIS 16734 (S.D.N.Y. Nov. 19, 1991) (legal aid attorney representing criminal defendant not a state actor).

Moreover, it is well established that private attorneys are not state actors when representing their clients in state court proceedings. *See, e.g., Thompson v. Aland*, 639 F. Supp. 724, 728 (N.D. Tex. 1986) (private attorney's representation of plaintiff's ex-wife in divorce action not chargeable to the state); *see also, e.g., Catz v. Chalker*, 142 F.3d 279, 289

8

(6th Cir. 1998) (plaintiff's wife's attorneys not state actors for purposes of section 1983 claim), *amended by* 243 F.3d 234 (6th Cir. 2001); *Simmons v. Sacramento County Superior Court*, 318 F.3d 1156, 1161 (9th Cir. 2003) (plaintiff cannot sue opposing counsel under section 1983 because he is a lawyer in private practice not acting under color of state law); *Kovacs v. Goodman, 383 F. Supp. 507, 508 (E.D. Pa. 1974)* (stating that "lawyers who participate in the trial of private state court litigation are not state functionaries acting under color of state law").

Additionally, attorneys do not act under color of state law within the meaning of section 1983 merely by virtue of being officers of the court. *Hahn v. Star Bank*, 190 F.3d 708, 717 (6th Cir. 1999); *see also Thompson*, 639 F. Supp. at 728. "The state merely provides a forum for the litigants and although lawyers are considered 'officers of the court,' they are not officers of the state within the meaning of the Civil Rights Act." *Jones v. Jones, 410 F.2d 365*, 366 (7th Cir. 1969), *cert. denied,* 396 U.S. 1013 (1970); *see also Thompson v. Aland*, 639 F. Supp. at 728. An attorney does not act under color of state law when acting in a professional capacity in enforcing clients' presumed rights even if another's civil rights are violated pursuant to his advice. *Tunheim v. Bowman*, 366 F. Supp. 1395, 1398 (D. Nev. 1973) ("An attorney acting only in a professional capacity cannot be held to judge at his peril with respect to the decision of difficult questions which divide the courts and provoke debate among legal scholars.").

It is true that courts have imputed state action to private attorneys in cases where, for example, the attorney performs a government function such as jury selection, *e.g., Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614 (1991) (private litigants are state actors when performing the unique government function of jury selection); or, the attorney is alleged to

have conspired with the judge, *e.g.*, *Kimes v. Stone,* 84 F.3d 1121 (9th Cir. 1996) (no immunity for private attorney accused of conspiring with judge to deprive plaintiff of constitutional right); or, the attorney knowingly utilized an unconstitutional attachment, replevin or garnishment statute. *E.g., Wyatt v. Cole,* 994 F.2d 1113. However, those circumstances do not exist here.

Even construing the complaint in the light most favorable to debtor, defendants Lungwitz and Mutti merely performed acts traditionally undertaken by privately-retained counsel. Debtor does not allege that in attempting to preclude debtor from waiving his exemptions, defendants were coerced by the state or that the state gave them significant encouragement to pursue the TRO. Instead, the complaint leads the court to conclude that defendants' decision to seek a TRO was guided by their professional judgment and their sense of ethical duty to their client. Inasmuch as the state merely furnished the forum and had no interest in the outcome of the case, defendants' conduct is not chargeable to the state. *Thompson v. Aland*, 639 F. Supp. at 728.[3]

---

[3] Debtor argues that *Polk* is distinguishable because defendants' representation of Ms. Boggess was not adverse to the state. Although the adversarial nature of the representation was a significant factor in *Polk*, also significant was the fact that the public defender was not acting on behalf of or under the direction of the state. Similarly here, defendants acted independently of the state. This case is also distinguishable from *West v. Atkins*, upon which debtor relies, because defendants were not performing a state delegated function. Also, because defendants' procurement of the TRO was guided by their responsibilities as attorneys, and not as a result of their affiliation (albeit tenuous) with the state, this case is also distinguishable from the cases cited by debtor in which teachers are held liable under section 1983 for having improperly exercised their state authority as educators to deprive students of their constitutional rights. *See, e.g, Hayut v. State Univ. of New York,* 352 F.3d 733 (2d Cir. 2003) (professor misused state authority and acted under color of state law when making humiliating and derogatory comments to student); *see also, e.g., Doe v. Taylor Indep. School Dist.*, 15 F.3d 443 (5th Cir. 1994) (high school teacher was a state actor because he took full advantage of his position as teacher to seduce student, and thus, real nexus existed between misconduct and required duties); *Dominic J. v. Wyo. Valley W. High School*, 362 F. Supp. 2d 560 (M.D. Pa. 2004) (high school swim coach was state actor because he required student to undergo drug screening in order to remain on swim team); *Warren v. Nat'l Ass'n of Secondary School Principals,* 375 F. Supp. 1043 (N.D. Tex. 1974) (high school teachers serving as honor society faculty council members accused of depriving student of due process were state actors).

Moreover, the TRO was issued by Judge Byrne. It was under her authority that debtor was temporarily restrained from withdrawing his exemptions. Defendants, who had no authority to issue a TRO, merely advocated for the issuance of the TRO on behalf of their client, just as any private attorney could have done. Absent an allegation of conspiracy, their merely resorting to the court and being on the winning side of a lawsuit does not make them co-conspirators or joint actors with the judge. *See Dennis v. Sparks*, 449 U.S. 24, 28 (1980). After all, even if a court wrongly decides a case, a private party's compliance with that wrong decision does not constitute state action. *Richard*, 355 F.3d at 353, *citing Landry v. A-Able Bonding*, 75 F.3d 200 (5th Cir. 1996).

Accordingly, debtor alleges no facts under which defendants can be deemed to be state actors. As such, debtor's section 1983 claim fails to satisfy the second prong of *Lugar v. Edmonson* and must be dismissed for failure to state a claim.

### III. DEBTOR'S MOTION TO STRIKE DEFENDANTS' MOTION TO DISMISS

Debtor moved to strike defendants' motion to dismiss because it was brought by the University of Texas Systems, a nonparty, and not by Lungwitz and Mutti. Debtor's motion to strike was opposed by the Attorney General of Texas, who filed an objection on behalf of Lungwitz and Mutti. Notwithstanding any confusion arising from the form of the motion to dismiss, striking that document would merely elevate form over substance and promote delay. The motion to dismiss was asserted on behalf of defendants, and no party has been misled as to its intended beneficiaries. Accordingly, the motion to strike is denied.

Moreover, as this court ruled in its order of January 18, 2006, to the extent that any question exists as to any party's standing to move for dismissal pursuant to FED. R. BANKR. P. 7012(b), the court is permitted to act *sua sponte* with respect to the relief ordered herein.

IT IS SO ORDERED.

# # # END OF ORDER # # #